The next matter on the call is Case Number 122949 in re Appointment of Special Prosecutor Better Government Association v. Office of Special Prosecutor, Agenda Number 6. Counsel for Appellant, when you're ready, you may begin. Good afternoon. My name is Matt Topic. I represent the Plaintiff Appellant Better Government Association. May it please the Court, Ms. Notes, Mr. Weber. This case involves access to records about a special prosecutor's closed investigation into a homicide committed by the nephew of then Mayor Richard Daley and a possible cover-up by police and state's attorneys. Defendants, City of Chicago and the Office of Special Prosecutor have refused to release those records. They do so even though the Office of Special Prosecutor has already released a report naming every single witness presented at the grand jury, the substance of their testimony and whether they testified under immunity, among many other details. In fact, every argument the defendants have made for secrecy over the records BJA requested would apply equally to the release of that report. There are two independent issues before this Court in this appeal. First, as to the City, is the interaction between a public body and the Federal GTE Investigation Act. In addressing that issue, the City, the Appellate Court and the Federal GTE Sylvania case on which they rely focus on the wrong question. The question is not how a public body must respond to a request for records that are subject to a secrecy order. The question is whether secrecy orders can block the release of records that must be disclosed under FOIA in the first place, something that GTE did not need to address. Second, as to the OSP, is the interaction between the grand jury secrecy provisions of the criminal code and the disclosure requirements under the Freedom of Information Act, and particularly the meaning of the phrase, matters occurring before the grand jury. Contrary to the very cases on which it relies, OSP's expansive definition ignores the historic distinction between a prosecutor and the grand jury and treats all prosecutorial records as grand jury records whenever a grand jury has been impaneled. Notably, no state's attorneys have filed any amicus brief in support of that position. I'd like to start with the court order question and I'd like to address the question that I would imagine is in the fronts of all of your minds as you consider this case. Why shouldn't we simply follow the GTE case on improper withholding? There are several reasons you should not. GTE never addressed the key argument in fundamental threshold question being made here, can a judge order a public body to violate FOIA by ordering it to withhold records that FOIA requires to be produced? GTE skipped over that question entirely and held that the mere existence of the order makes withholding records subject to the order not improper and therefore not a FOIA violation. The likely reason that GTE did that is because the underlying order that was at issue in GTE was an injunction barring disclosure of records in a reverse FOIA case addressing specific FOIA exemptions. The reverse FOIA case is one in which a private entity whose records are the subject of a FOIA request to the government files suit to establish that the records are subject to a FOIA exemption. In other words, the substantive analysis was going to be the same in GTE Sylvania. It was purely a question of which suit would resolve that subject matter. That is not what we have here. And we don't have that here because the city has never claimed any exemption applies to any of these documents. They purely rely on the mere fact that the secrecy order had been entered. After GTE, several federal cases that did not involve reverse FOIA have held that secrecy orders should have carve-outs for records required to be disclosed under open records laws. The Pansy case from the Third Circuit, the Ford and Davis cases from the Fifth Circuit all hold that. In addition, the Doe v. White Northern District of Illinois case declined to enter a protective order over records that were subject to Illinois FOIA. So if we look more closely at GTE and subsequent federal cases more squarely on point, it is clear that the improper withholding doctrine is not to be used to expand the scope of what can be withheld under open records laws. The second reason not to apply GTE is that there are many material differences between state and federal statutes and other law that are relevant here, notwithstanding the improperly withheld clause that exists in both statutes. And we deal with this at length in the brief, so I'll just sort of touch on some of the basics. Let's start with the basic framework under each of the statutes. Under federal FOIA, the basic inquiry is this, quote, jurisdiction under FOIA turns on whether an agency has one, improperly, two, withheld, three, agency records. That's from the Kissinger case and many others. On the other hand, under Illinois FOIA, this is the inquiry, quote, when a public body receives a proper request for information, it must comply with that request unless one of the narrow statutory exemptions applies. And the statute has been amended to reference set forth in Section 7, later it added 7.5 and 8.5, but the point has always been, and this Court has always held, that unless a record is exempt under a specific statutory exemption, it has to be produced. There's no further inquiry as to whether something was improperly withheld or not. Next, there is the difference between the PAC provision in the state statute and the lack of any similar provision in the federal statute. The reason that matters is because this improper withholding clause that was relied upon by the appellate court exists only in the jurisdictional statement for the circuit courts. There's no comparable provision in the review provisions by the Attorney General and the Public Access Counselor. And so you'd have this result of a dichotomy in which a record is a basis in a circuit court action to withhold a record, but it's not a basis to withhold it in an action in front of the PAC. And the PAC only has the authority that has been vested in it by the General Assembly, so this would indicate the General Assembly did not intend improper withholding to have any sort of broad meaning. It simply means that it's not exempt. Also, could you address the recent case of People v. Zimmerman, which this Court talked about, the Court's authority to issue protective orders? I'll confess I'm not specifically familiar with the case. We don't dispute that, and I don't believe it maybe was cited and I missed it. We don't dispute that there are certain authorities that the circuit courts have to enter protective orders as to the conduct of the parties that are before the court, for one, which is not what we have here. We have a secrecy order that purports to prohibit a third party from disclosing documents to some other third party. So there is one distinction there. At some point, I assumed it was you, the BJA, did go back in front of Judge Tumman, correct? So what happened is the Chancery Court held that Judge Tumman's secrecy order does not give rise to a FOIA exemption, so it can't block the disclosure of records. The city went back to Judge Tumman and asked for relief from the order. We agreed and we did not intervene. So there was no appeal, of course, no challenge to the order that Judge Tumman entered? Well, the city appealed Judge Tumman's decision not to modify his order, and then we have argued in our appeal here that, yes, the order should be vacated. We did not intervene into the criminal case, and there's a very good reason for that. What I would point the court to is the DC Circuit Court opinion in the GTE Sylvania case. It's Consumers Union, I forget the rest of it. But it talks about the difficulties that a requester would face in having to go into a third party's case at its own expense, possibly without the fee recovery that's allowed under FOIA, to try to undo a protective order that it had no notice of and was not a party to before it had been entered. So those are the reasons. When we made a decision how to approach this case, our decision was that this is a FOIA case, and it should be brought as a FOIA case, and it's the obligation of the public body as part of what the statute calls its primary duty, notwithstanding the fiscal obligations, to remove whatever impediment it may believe is in the way to satisfying its statutory obligations to produce the records here. Counsel, how do you address the closing counsel's argument that under the BGA's construction of the grand jury secrecy provision, the prosecutors could no longer promise potential witnesses that their identities and their testimony will remain secret, because they won't know at the outset if the witness has material information that will end up presented to the grand jury? So that goes to the appeal as to the special prosecutor. First of all, it is the province of the General Assembly in what is included in the criminal code to decide how to manage that process. I would say there are FOIA exemptions that apply to a number of things that might be relevant to a criminal prosecution or potentially to a grand jury proceeding, and one of those is an exemption that applies to the identity, to records that would disclose the identity of a witness. And so there is an exemption that could have been asserted, but at this point, a 162-page report has been released. It discloses the name of everyone who testified in front of the grand jury. So the names of those witnesses are, nothing would be disclosed to the public by releasing whatever record the OSP also has, because they've already made the decision with the blessing of the criminal court to release that report. It is extremely lengthy and gets very detailed, and any concerns or arguments like that would equally apply as well to that report. I think there also is a distinction on the grand jury side of the case that permeates everything that's happening here. The mere fact that a grand jury has been impaneled does not mean that all the records of people who were interviewed reveal something that occurred before the grand jury. There is a longstanding tradition. It's included in the very cases that they cite that say the prosecutor and the grand jury are independent of each other. And the mere fact that there's been a grand jury impaneled doesn't mean that just because a witness was interviewed, it was interviewed because the grand jury wanted that witness to be interviewed. And so there's a number of cases cited. The Senator of Puerto Rico case and the Verisario case both talk about how there needs to be evidence that would show that disclosing this particular record would disclose something that occurred before the grand jury. And there's no evidence of that. The special prosecutor has never presented any affidavits. There's never been an in-camera inspection of the documents. They have always taken the position that because a grand jury has been impaneled, everything they've done has been directed by the grand jury. And that's inconsistent with case law on grand juries and it's inconsistent with law that talks about the need for proof that disclosing a record would actually disclose something that happened before the grand jury. I went very far afield of your original question, but I did want to make those points. I want to just go back to the court order question and get a few other points out there. Another key distinction between state and federal contempt law, or at least something that was never addressed by GTE, is that the law of this state says that it is not contempt of court where the order would require you to violate the law. And if a record is not exempt, FOIA says the record has to be disclosed. If it's a public record of a public body, then there's no dispute that that's what we have here. So unless there is some other exemption that applies to it, Judge Tuman's order was ordering the city to violate the Freedom of Information Act by telling it it couldn't release a document that it had an obligation to produce. Now, we certainly are sympathetic to the position in the very short term that the city was placed in. They have an order that says one thing, and I appreciate that it's a little bit of a risk for them to say, but that order says to violate the law, and so therefore we're just not going to address it. That is a very short term problem that this court, in this case, should resolve. If you hold, as you should, that individual judges cannot effectively create new FOIA exemptions through court orders, then this is not a problem that's going to recur. We aren't going to have a future situation where a public body is caught between two different orders or caught between a statute and an order. There's just uncertainty right now as to how exactly those two things are going to interact, and I submit that you should hold that individual judges do not have the authority to tell a public body that it has to violate the Freedom of Information Act. This court has held for decades that it is exclusively the province of the General Assembly to decide what records are exempt and what records are not exempt. There's also this court's 1980 decision in DeFantis under the Open Meetings Act that was actually right around the time of GTE, and you can't reconcile that with GTE, because in DeFantis this court said, quote, this clearly enunciated public policy of open meetings will be poorly served were we to carve out exceptions  and that is exactly what the city is arguing here is there should be additional exceptions not set forth in the act for whenever a judge says that a record can't be released or that a judge can effectively create exemptions by saying through a protective order records can't be released. There's a lot of very important practical ramifications to this. I talked about the burden on the requester to intervene in a third party's case. There's also the question of the standard of review on appeal and what showing is necessary to obtain a protective order. Under FOIA, you have to prove an exemption by clear and convincing evidence. It must be something that is set forth in the statute. You have to narrowly construe the exemptions, and there's de novo review on appeal. The appellate court here basically said the secrecy order is essentially unreviewable. As long as some rational person could find that maybe that order makes sense, a very deferential standard of review, then the records would have to be withheld. That completely contradicts the regime we've long had under FOIA for very good reason, to allow the public to monitor the government. That's not just flowery language or aspirational language. The General Assembly, when it passed the Freedom of Information Act, effectuated a sea change in how people can interact with the government and have access to records that they're entitled to. In fact, it describes a duty of the public to use FOIA to monitor the government. The last point I'll make on the court order's question in GTE Sylvania, of course, is that it is a federal case. It is not binding on this court, and because there are a number of differences that I've pointed out between the statutes, because of the practical ramifications of following it, this court is not obligated to follow GTE Sylvania, and this would not be the first instance in which this court did not follow a federal case when there were differences between the text of different statutes. The city's quibbled about those differences and how significant they are in this case versus the AFSCME case, but the point still holds, regardless of any of that, that this is an independent court that does not have to follow how federal courts interpret federal FOIA, and we've cited a number of academic authorities that have rightly pointed out a lot of the problems with how federal courts have approached FOIA, and that they're far too deferential to agencies, which this court typically has not done. Alternatively, the city argues that setting aside the improper withholding argument, in addition that a court order is a state law under Section 71A. Neither the appellate court nor the circuit court accepted that argument, and I'll mostly rely on our briefs, but just a few points. Section 71A makes no reference to court orders, even though there are other states that do have similar exemptions that do talk about court orders, one of them being Texas. The very next exemption in the statute, Section 71B, makes reference to state or federal law or a court order. So clearly, if the General Assembly wants to reference a court order, then they can reference a court order. In fact, they did that in the very next provision in the statute. We have competing dictionary definitions. I think probably the easiest way to resolve that is use the city's own dictionary, but use its definition of state law instead of just law in the abstract, and it says legislature passed and signed into law and signed by the governor. So we're clearly talking about statutory law. And then the concurrence in the Carbondale case, it squarely addressed this issue that was a secrecy order that was a condition of a dismissal in the settlement. It talks about all the logical problems and practical problems with having a rule that says that court orders are state law. Also on court orders, even if you don't agree that court, even if you were to find that the court order is a valid basis to withhold records, the Carbondale case talks about how a public body can't be at all involved or substantially involved in obtaining the order if it's going to rely on it. In our briefs, we talk about the chronology of events. And the city went back to Judge Tumman and asked him to expressly put into an order that they are prohibited from releasing records when instead the public access council told them they could have produced the records based on the record as it had existed at that point. So as we lay out in the brief, the city itself was involved in the efforts to obtain that order. And then just in terms of the order itself, I think you have the authority to vacate the order because in essence it is a gag order on the city that says the city cannot disclose information that it otherwise would be free to disclose. That has to overcome a heavy presumption unless the court would need to show serious and imminent threat of impending harm. This is an investigation that was long over by that point in time. So we really are down to academic arguments about grand jury secrecy. That's not the kind of serious and imminent harm that would be necessary. In my remaining time in the opening remarks, I want to turn back then to the grand jury question. The OSP has not proven that the requested records are, quote, matters occurring before the grand jury. It's their burden of proof. Their argument presumes that there is this well-established broad construction of the phrase. And we went through in our reply brief each and every one of the cases that they cite, and none of them hold that. And in fact, as I had referenced earlier, they have reiterated the distinction between prosecutors and a grand jury and made clear that they are separate and independent and that just because there's a grand jury doesn't mean that the prosecutor's records about its activities are subject to the grand jury statute. For example, the In Re Grand Jury Investigation case, a discussion of actions taken by government attorneys or officials, and it gives an example, does not reveal any information about matters occurring before the grand jury. There's a couple cases I would just highlight where the OSP has cited language out of context. It says, Grand Jury 89-2, it does use the word broadly, but the full sentence says, we have broadly interpreted Rule 6E, that's the federal rule that's the corollary, to encompass what took place in the grand jury room or what is said or takes place in the grand jury room. And then there's also some similar things with regard to government inquiry that we talked about. I see I've used up my time, so I will have further comments later. Mr. Weber, you've agreed to split your time. We have, Your Honor. You'll get a three-minute warning. Excellent. May it please the Court, I am Sean Weber from Winston-Straun on behalf of the Office of the Special Prosecutor. Your Honors, I'm here today to encourage this Court to affirm the appellate court's holding as it relates to what is now a narrow category of documents that remain at issue in this case. And I believe it can do so easily based on longstanding notions of grand jury law that are buttressed by the appellate court decisions in this State. In my allotted time, I'd like to address three points, somewhat interconnected, but I believe a little bit distinct. The first is the notion that the Office of the Special Prosecutor is advocating for some sort of broad or unnecessarily broad definition of what constitutes matters occurring before a grand jury. That's absolutely just not true. We are very happy living with the, however anyone wants to coin them as broad or narrow, we're very happy living with the definitions of what constitutes matters occurring before the grand jury as the law is today and has been at least since 1982 in this State, which is through the Varasario case. I believe it's the only appellate court case that has actually tried to define what constitutes matters occurring before a grand jury, but it does so very neatly in sort of five categories, I'll call it. One is identification, and these are not categories that I think are really in dispute, identification of witnesses or matters occurring before a grand jury, the substance of their testimony, the strategy and the direction of the grand jury, the questions of the grand jury, and there is this catch-all and the like. But even if we keep it to those four ironclad categories, the materials sought here today or that remain being sought that are up on the appeal squarely fall into the Varasario categories. They're asking for what in essence is a witness list, identification of grand jury witnesses. That argument was brought forward in the very same form as you've heard it here today and as you saw in the briefs. It was summarily rejected by Judge McFett of the trial court, it was squarely rejected by the tribunal of the appellate court, and I believe should be squarely and summarily rejected by this court. The other category of documents they seek is grand jury statements and interviews of a subset of the witnesses, and the communications from our office to those witnesses, in essence to the witnesses' lawyers in response to a grand jury subpoena trying to procure their testimony. All those documents that remain squarely fall into the Varasario rubric, which mind you, while it is probably the only, I believe I think it's the only appellate court case in the state that's addressed the issue, it's not just based out of whole cloth. They cite back to a long lineage of federal court cases, which Judge Tumeng glommed on in his multiple opinions in this case, which then cite back to about 800 years of common law on the importance of grand jury and the secrecy, and Justice Thomas, in your opening question, to the BGA. The OSB remains heavily concerned about not only the grand jury that it oversaw for the 17 months, but future grand juries, as Judge Tumeng has noticed in all his opinions on this case. It's not just about the matter in the grand jury that was investigating the death of David Kochman. It's about future grand jurors, and I don't believe the BGA has done anything to assuage, I think, what are real fears for those who, not like myself, who moonlight as a prosecutor. I'm a private practitioner, but for those who actually do practice in this day in, day out, as a couple of members of this esteemed court have in their background as well, when you are a prosecutor dealing with multiple grand juries, there is a significant risk that if you don't protect the identification and the substance of those testimonies, how do you go into the future lawyers that you're dealing with and try to say, listen, here's what we'll do. I know what happened in that other case, but don't worry, this time I am going to protect you. There's a serious concern about the future integrity and protecting that, and I do believe that that's clear through all the attendance of the cases for which we cite. The second point is this distinction, or the attempted distinction, which, again, has been brought by the BGA in both lower courts and some earlier rejected, this distinction between the office of the special prosecutor and that of the grand jury's work. Especially as it relates to, I don't have the answer, by the way, why there's no other state's attorneys here submitting briefs. I think it's because we are sort of a unique entity. This is certainly a hot-button, hot-potato case. The lineage of how it's got to our office is long and tortured, and there's no dispute about that. But the distinction between the OSP and the grand jury is a distinction without a difference. We're a single-purpose entity, okay? The BGA is not asking for our private practitioner records. They're asking for records that I can tell you by definition only were created in conjunction with our work as the Office of the Special Prosecutor. There are no other records that were in existence prior to, because we as an entity, and a formal legal entity, the Office of the Special Prosecutor, did not exist until Dan Webb was appointed by Judge Shuman in April of 2012. And the notion that there are somehow abundant records, hypothetically, that exist, that aren't tethered to the grand jury, I can tell you, it's just, it's not true. I mean, we have private employment records, okay, that go to the Winston-Strawn and the partnership and those folks. But they're not seeking any of that. They're seeking records that are directly tethered to our work of interfacing as the lawyers for the grand jurors. That's what we were for that 17-month investigation. The third point is somehow. You're not meaning to imply that there would be a different standard for a prosecutor versus a special prosecutor, are you? I'm not. No, not on the notion of what should constitute matters occurring before a grand jury. But I think there are some documents. They want, the BJA has tried to suggest that there are some other categories of documents that they might hypothetically be interested in under this notion that we say we have a very broad interpretation of what constitutes matters occurring before a grand jury, and therefore anything that ever crosses the threshold of a prosecutor is per se grand jury material. We don't need to go that far. There is probably a distinction between the Cook County State's Attorney's Office and Winston-Strawn acting as an office of special prosecutor. For example, you could submit a FOIA request for policies and procedures to the Cook County State's Attorney's Office and they wouldn't say, well, because that record exists in my office and I'm a prosecutor, you're not entitled to it. I believe this court in 2014 or 15 in the Nelson case said no, your prosecutors are subject to FOIA. I'm just suggesting that the records that remain at issue in this case clearly fall under matters that are protected as grand jury protected documents. And then briefly in my allotted remaining time, this notion that the office of special prosecutor somehow failed our burden or not carried our burden to demonstrate that the documents that remain are, in fact, properly protected from FOIA. The Varasario Court dealt with this argument and rejected it. And it did so in, I believe, one of the only footnotes in that case, footnote one, where it said it's unclear to us whether or not the trial court addressed the sort of factual underpinnings of whether or not the actual document that it sought was actually presented to the grand jurors in sort of this four corners of the room argument. The court just identified it that it had been raised and just didn't deal with it because it addressed it much differently by saying, aside from whatever evidentiary issues might or might not have gone on at the trial court, we can comfortably make a determination on the documents at issue in that case of whether or not they constitute matters occurring before the grand jury. And it did so. And it did so in a very, as the appellate court has noted in this case, it did so in a very clean fashion that allows us, I think, very reasonable and tethered rules to work for in the future. Lastly, if there is any sort of error as it relates to the procedure by which Judge Mikva and then ultimately the appellate court's upholding of Judge Mikva's determination, I don't believe there is. And that's because Judge Mikva clearly had discretion as relates to this in-camera inspection. Now, granted, the FOIA section does say in 11F that the court shall conduct an in-camera inspection, but it doesn't just stop there. That sound bite is not enough. It goes on to say that it shall conduct such in-camera examination as it finds appropriate. She clearly has discretion based on the requests which are in evidence, the requests at issue, which at the end of the day, taking out all the noise surrounding this case, they want a grand jury witness list, and they want a subset of those witnesses' grand jury statements and interviews. Judge Mikva, a smart jurist, did not need to see what those documents would look like to make a determination of whether or not those constitutes very clearly categories of protected and exempt materials under Varisario, and to suggest otherwise I think is sort of misinterpreting and unfair to the trial court's hard work on the case. With that, I see my time is up, and I will yield to my colleagues from the City of Chicago. Thank you. Good afternoon. May it please the Court? Good afternoon. Good afternoon. Good afternoon. Good afternoon. Good afternoon. Good afternoon. Good afternoon. Good afternoon. This provision is materially indistinguishable from a similar provision in the Federal FOIA. In the GTE Sylvania case, the United States Supreme Court interpreted that similar provision in the Federal FOIA to hold that a government does not improperly withhold records when a court order forbids their release. Counsel for the VGA has argued that GTE Sylvania is somehow distinguishable on the facts from the present case. There's no distinction that I can see. The holding was clear. Where there is an extant protective order, a public body does not violate FOIA when it complies with the protective order and declines to release records covered by the order. And this Court has held that because the Illinois FOIA was modeled on the Federal FOIA, cases interpreting the Federal FOIA should guide the interpretation of similar language in the Illinois FOIA. For this reason, the appellate court correctly followed the lead of the United States Supreme Court in GTE Sylvania when the appellate court held that a public body does not improperly withhold records and therefore does not violate FOIA when the public body declines to produce records covered by an extant protective order. The VGA argues that the text of the Illinois FOIA compels a different result because the Illinois FOIA contains an express list of exemptions that has been held to be exclusive. This is incorrect because the Federal FOIA also contains an express list of exemptions. And in the Department of Justice versus Tax Analyst case, the United States Supreme Court considered that list of exemptions along with the Court's prior holding in GTE Sylvania and held that the Federal FOIA's list of exemptions is exclusive and exhaustive and therefore that the government must produce records unless they fall within one of the listed exemptions with one limited exception, and that is the case presented here. Where an extant court order forbids the release of the requested records, the Supreme Court in the Tax Analyst case held that the records should not be produced. Because the Illinois FOIA was modeled on the Federal FOIA, the Supreme Court's approach in Tax Analyst should be followed here and the appellate court's holding that the city did not improperly withhold records under the Illinois FOIA should be affirmed. This morning, counsel for the BGA also referenced the PAC provision, Section 9.5 of the Illinois FOIA, as something that he thinks is a material difference between the Federal FOIA and the Illinois FOIA on this point. He's incorrect. His position seems to be predicated on the idea that the PAC would lack authority to review a determination by a public body that records should not be produced because they are covered by an extant protective order. There is nothing in the Illinois FOIA that says that. When the Illinois FOIA limits the PAC's authority, it is expressed. So, for example, the Illinois FOIA is expressed that the PAC does not respond to a request for review of a decision to deny a request by a commercial requester. Further evidence that the PAC has authority to review a public body's decision to withhold records based on an extant protective order is what happened in this case. The PAC reviewed the decision. Clearly, the PAC thought she had authority to review the city's decision here, and no judge who has looked at this case, again, all five of them, Judge Tooman, Judge McBurr, the three justices on the Illinois Appellate Court, not one of them thought that the PAC lacked authority to look at the city's FOIA determination here. So, for all these reasons, this Court should affirm the Appellate Court's holding that the city did not improperly withhold records when it relied on an extant protective order to withhold those records. In the alternative, this Court should hold that the city did not violate FOIA because the records at issue were exempt under Section 7-1A, which exempts records from disclosure when disclosure is prohibited by state law. In entering the protective orders, Judge Tooman interpreted and applied Section 112-6 of the Illinois Criminal Code. Judge Tooman's orders thus became part and parcel of this Illinois statute, and therefore those orders qualify as state law for purposes of the Section 7-1A exemption. In its brief, the BGA spent much time arguing that Judge Tooman should not have entered the protective orders or that he should have modified them when he had the chance. Whether Judge Tooman erred in either entering the orders or declining to modify them is not relevant to the question whether the city violated FOIA. Judge Tooman had jurisdiction to enter the orders, and they were not frivolous on their face. In these circumstances, the city was required to comply with them until they were modified or overturned. Today, counsel for the BGA made the argument that that is not the law in Illinois. I know of no case in Illinois holding that if there is an extant protective order, an entity can disregard it if the court that entered that order had jurisdiction to enter it and the order is not frivolous on its face. Thus, the city did not violate FOIA when it relied on the orders to decline the BGA's FOIA request, either because the city did not improperly withhold the records under Section 11D or because the records are exempt under Section 7-1A. Lastly, this Court may determine that Judge Tooman should not have entered the protective orders or that he should have modified them in light of changed circumstances. If this were to occur, the Court should nevertheless hold that the city did not violate FOIA because at the time of the BGA's FOIA request, the extant protective orders precluded the city from releasing the records. And because the city did not violate FOIA, the BGA is not entitled to attorneys' fees and costs from the city under the FOIA's fee-shifting provision, even if this Court were now to reverse the protective orders or direct Judge Tooman to modify them. If there are no questions, we respectfully request that this Court affirm the judgment of the Appellate Court entering judgment for the city and against the BGA on the BGA's FOIA complaint against the city. Reply. Let me go back first to the arguments of the Special Prosecutor. Mr. Weber said that we asked for a list of grand jury witnesses. That's absolutely not what we asked for, and that's clear from the plain text of the request itself. We asked for documents sufficient to show the names of everyone interviewed by Dan Webb's Special Prosecutors in relation to the David Kochman-Richard Vinacco case. It's certainly the case that the OSP released the list of everyone who testified in front of the grand jury when they got permission to release the report, but that's not what we asked for. We asked for who they interviewed, and they have reiterated again today their belief that, I believe his words were, there is no distinct, it's a distinction without a difference or they are part and parcel of each other. That flies in the face of decades of law that says the grand jury is independent of the prosecutor. The prosecutor has no obligation to present all the evidence it has to the grand jury, whether that's additional evidence that might be in favor of a conviction or whether that's exonerating evidence. There can be no dispute that the two are distinct from each other, and the Verisario case and Justice Ginsburg's opinion when she was on the D.C. Circuit in the Senate of Puerto Rico case both talk about that distinction, that just because there was a grand jury doesn't mean that everything that happened, everything that the prosecutor did is an action of the grand jury or would reveal anything about the grand jury. The In Re Grand Jury Investigation, which is a rather generic name, again says that the discussion of actions taken by government attorneys or officials does not reveal any information about matters occurring before the grand jury. We get prosecutorial records all the time from the Cook County State's Attorney's Office where I know there was a grand jury impaneled. So this idea that we're asking for some revolutionary kind of set of transparency into what happens in front of the grand jury, that's just not the case. There is a distinction between the grand jury and the prosecutor, and that has nothing to do with whether the Winston and Strawn lawyers wear the OSP hat versus Winston and Strawn hat. We would be making the same argument if it was the Cook County State's Attorney's Office that only does, you know, the divisions that only do criminal prosecutions. They are two separate and distinct things, and I think if you look very closely at the Senate of Puerto Rico case in particular, it talks about how they're different and that there needs to be evidence that, and there I think they're saying, they are saying, even if it was a document shown to the grand jury, it wouldn't necessarily reveal, you know, the actions of the grand jury or the strategy of the grand jury, and there has to be actual evidence for the court to be considering. So Judge Mikla didn't look at any of that evidence, and under Illinois Education Association and other cases this court and the appellate courts have held that FOIA exemptions have to be proven by clear and convincing evidence. There's got to be either detailed affidavits that prove out the exemptions, or there has to be an in-camera inspection, and there's a very strong preference in favor of in-camera inspection, and that didn't occur here, so there is no deference that should be shown to, or that needs to be shown to Judge Mikla's determination to say, well, just looking at these requests, I can tell that everything would reveal what happened before the grand jury. That completely erases the historic distinction between prosecutors and the grand jury itself. As to the questions about witnesses and what could be said, you know, concern about witness confidentiality, again, they released all those names already. If that was really a concern, I don't know how you can rectify that with the decision to release the report. And notably, both entities here are relying on exemptions that not only would give authority to a government entity to withhold a document, there are exemptions that require there to be an actual prohibition on releasing documents. So if it's the case that the city's prohibited from releasing the subpoenas, or if it's the case that the special prosecutor is prohibited from releasing what we asked for, then there was a prohibition on release of the report. And Judge Tooman violated the statute, and the OSP violated the statute. That's obviously not the case, and the reason it's not the case is because this doesn't disclose matters occurring before the grand jury. Turning to the city's arguments, you can see in the record, and you can see in our briefs very clearly, what the city's role was. There was a protective order. It was vague about exactly what it prohibited or not. They went to the public access counselor, public access counselor said, it's not clear to us that this protective order prohibits the release of some of those documents. So either release them or go back and get clarification. When they went back, they didn't just say, Judge, we have no dog in the fight here, we have no horse in the race, whatever you rule is fine, we just want to know what to do. They said that the Pax argument was illogical, and they asked that the court, quote, conclusively state that they were prohibited from releasing the records. That is indistinguishable from the Carbondale case, in which the government and the private entity it had a lawsuit with, went to the court and asked for the very protective order that they then turned around to try to argue under Section 718, that they prohibited them from releasing documents, and that's because you're not supposed to use exemptions as a sword, you're only supposed to use them as a shield, and that's laid out very clearly in the concurrence in the Carbondale case, in the majority in the Carbondale case. The distinction between whether the PAC could review whether this order prohibited disclosure. The argument seems to be that because an agency took an action, that's proof that the agency had authority to take that action, that can't be the case. The PAC only has the authority that's granted to it under the statute. It has a clear distinction between improperly withheld being something that's relevant under,  you can even forget about that if that gets you hung up, because there are plenty of other provisions that don't make sense if you apply GTE-Sylvania. Look at the provision for settlement agreements, Section 2.20. The General Assembly, after public bodies had said, oh, we can't release these documents because there's a confidentiality clause in the settlement agreement, General Assembly says no, and says in absolute terms, settlement agreements must be produced. So if you apply GTE-Sylvania in this case, and a public body got a judge to enter a dismissal order that prohibited the release of the settlement agreement, that would result in thwarting exactly what the General Assembly recently added to the statute. And under their logic, it wouldn't matter whether that was a good order or a bad order, or whether the order made sense or not, the mere fact that the order was entered then would become an absolute bar to releasing records. That's completely contrary to the purpose of the Freedom of Information Act. Last point, the city says they're not aware of any cases saying that an entity does not commit contempt of court by failing to comply with an order that asks them or purports to command them to violate the law. I cited two cases and several secondary authorities on it, the marriage of Knights, K-N-E-I-T-Z, Abbott versus Abbott, both expressly say it is not contempt when the order would require you to violate the law. FOIA is a law, it requires the disclosure of records unless there's a specific exemption that applies. The city doesn't cite any specific exemptions beyond the order, and therefore the city is not obligated to follow the order. But again, that is a short-term problem. You don't need to be concerned about that situation in the future, because if you hold, as you should, that individual judges cannot tell a public body to violate FOIA and that only the General Assembly has the authority to make records exempt, then this is not an issue that's going to occur. So for these reasons, we ask that you affirm the longstanding FOIA principles that have guided this Court's decision and reverse the appellate court. The decision as to the court orders was already rolled upon by Judge Mikva in our favor. As to the special prosecutor, it would need to be remanded for further proceedings consistent with the court's order. Thank you.